Good morning, Your Honors. If I may, I'd like to reserve two minutes for rebuttal. You may. Thank you. Judith Meisner, representing the appellant Robert Joubert. I'd like to address the suppression issue first. This was a – the search at issue was a 2012 search of the home of Mr. Joubert's parents. It was based on an affidavit from a Concord, New Hampshire, detective alleging probable cause to search that home for evidence of felonious sexual assault committed eight to twenty-eight years earlier at some other locations. We're not challenging whether the affidavit supported a finding of probable cause to believe that Mr. Joubert committed offenses at various times between 1984 and 2004. We are challenging whether the affidavit supports a finding that there is probable cause to believe that evidence of those felonious assaults would be found in the place to be searched, the parents' house, at the time of the search, which is June of 2012. The district court decision predicates its finding of nexus on allegations that Mr. Joubert had taken numerous photos and videos of a number of youths, including at least one of the victims, and that it was common for people to keep photos and videos in their homes and to do so for years. I think we have to keep in mind that the warrant is to search for evidence of particular offenses for which there was probable cause, and there's no probable cause to believe that Mr. Joubert committed offenses against anyone other than the persons who are listed in the affidavit as having given information to the detective. You can't say that I think the defendant, I think someone did something, give me a warrant to search to see if he did something else, which is somewhat along the lines of this affidavit's suggestion that they're searching to confirm or dispel allegations. But examining the allegations concerning the photographs that are described in the affidavit, first there's no reason to believe that there would be photographs of any assault, because there was no allegation anywhere that such photographs were taken. There were assertions of photographs taken as to one victim, M.T., and those were photographs that were taken in various outdoor locations during a time frame when the defendant was living in that household. There was no suggestion that those photographs involved any inappropriate posing or any inappropriate focus. The second set of photographs, shall we say, are photographs, assertions that they're photographs taken by Mr. Joubert at various ball fields. Mr. Joubert was a baseball coach and an instructor, and these photographs were taken during games or tournaments. There was no evidence of the content of any such photographs. This was information provided by two people from the Exeter-New Hampshire Baseball League. What about, as I understand it, the son told the police that his father had learned there was an FBI investigation going on as a result of parent complaints regarding how he was treating or observing youths, and that, quote, his father seemed very concerned about destroying or cleaning the hard drive from the computer, and while at his parents' home, he tore apart the computer tower trying to remove the hard drive. Doesn't that suggest that, as a result of these complaints, he thinks that he himself thinks there's something that he doesn't want the FBI to see on the computer? Well, first of all, the computer was left outside and taken by the son to the police, who apparently did not search the computer before they obtained this warrant, and the computer had been discarded. Now, the son describes the taking apart of the CD drive and a floppy disk drive that he says the defendant brought back into the house, but those are drives that don't store anything. Those are simply operational drives. So, in terms of supporting a nexus between any offenses and the place to be searched, I'd suggest that the description of the computers does not support. But he told the police also that his father also had a laptop computer. Yes. So, they didn't find that out. If he's so concerned that he is discarding a computer, why would he keep a computer that … Well, I think 90% of the criminal cases we see, the criminals weren't very smart about what they did with the evidence. Sure. But there was, again, there was nothing in the affidavit to suggest that there were photographs on the computer. These photographs were taken a number of years ago as well, and they were not taken with a computer. In fact, they were taken, according to one of the Exeter people, with a flip phone. And I'd suggest that it's not unusual for a coach or an instructor to take photographs of ballplayers for instructional purposes, but you also would not necessarily expect him to keep those pictures after he has finished training or coaching that particular individual. And again, there was no suggestion that there was any posing or inappropriate focus. The third set of photographs involved a video of players at a swimming pool in Florida. And according to the owner of USA Training, where Mr. Joubert had worked, he had received some complaints about that from a parent before he terminated Mr. Joubert. Mr. Joubert was terminated in 2009. The parent who complained about this said that it occurred in 2010. There's no evidence of the particular content of these videos or even why the parents were upset. And again, there were no allegations that they were sexual in nature. What about, given the allegations that he, in fact, was abusing and molesting minors? They also had those allegations. And then they had complaints from parents that he was photographing children in some way that led the parents to complain about it, even though they didn't give descriptions of photographs that were themselves pornographic. But if you have someone who is being accused of child molesting and has got parents complaining about taking pictures of their kids, why wouldn't the police reasonably think that a computer that he's trying to destroy might have something very substantial on it regarding the crimes? Well, first of all, there's no evidence that... They were not looking for evidence of child pornography. The district court found that as well. No, but they were investigating child molestation. Right. But there is no evidence to suggest that any of the photographs that he took were of a sexual nature. I'm not sure why that's necessary. And that's one of the problems that I'm having with this. If there's reason to believe that he took photographs of people who there was reason to believe were his victims, I mean, they don't know, his defense might be, I never met that kid. So it's relevant evidence that they're looking for. Isn't really the only question here about whether he would have those photographs in the house? Yes. Isn't that... The nexus to the house. And the nexus here is based on it being two factors. One, that he is living there. And two, the conclusion, the assertion that people keep photographs. In terms of the nature of his residency, this was his parents' house. His son described him as sleeping on the couch and as having moved there a few weeks earlier. There's no description of this as a permanent residence. And the warrant itself shows that he was a somewhat peripatetic individual, that he lived in a number of different places over the course of time. But is there some suggestion that he was living at some other place at the time that the warrant was going to be executed? No. No, Sir. He was living there, but there's nothing to suggest that he took all of his belongings and brought them to the house. Why not? Why wouldn't that be the case? Why can't the affidavit include, and why isn't it enough for the police officer to say that based on his training and experience, people who commit the kinds of crimes that we're investigating tend to keep those materials with them? I'm not suggesting the answer, I'm just asking the question. Because most of those assertions about people tend to keep photographs are made in the context of child pornography cases, saying that so-and-so is a collector, collectors keep their child pornography. We're not talking about those kinds of pictures here. We're talking about pictures that the government is suggesting may demonstrate a relationship that may or may not be denied. But I thought Judge Kayada's point was that there was a statement that people who molest children also tend to keep photographs. There is nothing in the affidavit that supports the officer's conclusion about that. I'd suggest that's somewhat like the kind of generic observations and assertions that this court found insufficient in Vigent and Gifford to support a search warrant. The statement was, based on my training and experience and supported by the actions of the suspect in this investigation, I know the person's engaged in the molestation and exploitation of minors. So if it's child pornography, if it's those kinds of photographs, you don't object to that sort of a statement in the affidavit? It's the molestation part? Or are you objecting to both? No, I'm saying that generally the statements about people keep things arises in the context of child pornography, where there's a basis for it. And there's nothing that I see in this affidavit that supports... The first point, is there anything wrong, though, with that sort of an assertion supporting probable cause? I think it depends on whether the government establishes that the particular individual at issue is a collector. He's taking so many photos in so many situations that it's causing parents to complain. There's a complaint that he is, in fact, a child molester. Why wouldn't it be just an ordinary inference that he wasn't taking the photos to press the delete button ten seconds later? He was keeping them. Because... Particularly given the son's reaction about his flurry of activity of trying to take apart his bigger computer, the one with the towel. Well, if he's trying to take it apart, that suggests that that may be where he thinks there's something wrong. Sure, and maybe he was successful and he'll find nothing, but maybe he wasn't successful. Why give him another three days to destroy the evidence? But there were not a large number of parent complaints about photographs. The only complaint about photographs came from the video in Florida. The photographs that were taken of M.T. and the photographs that were taken at the ball And so, you don't have a pattern of complaints, and given the lack of a, what I'm saying is the lack of a good, solid nexus to the parent's home, that... Where else would they... If he wanted to get the photographs, where else would they go to look other than where he was staying and had his computer? There's nothing to say that those photographs were on a computer. They were taken decades earlier. There's no suggestion that he had that computer at the time the photos were taken. But why was he running around trying to destroy the computer if there wasn't evidence on the computer? He told his son that there was information about clients and financial information that he did not want anybody to get. And... I see I've gone over. Good morning. Seth A. Frame for the United States. The defendant's brief raises the Fourth Amendment issue in terms of nexus. I really think it's two questions. The first question is, were these photographs evidence of the crimes that were talked about in the affidavit? That's the first question. And then the second question is, was there a reason to go look for this evidence at the place that they went to look? So as to the first question, were these pictures potentially relevant evidence, I think the answer is clearly yes. First of all, most directly, there were photos, as Judge Howard suggested, of one of the victims. And the defense very well could have been, I don't know this victim. This person's making it up. This person's in a cabal with the other four people in the affidavit. Evidence that they did know each other certainly is corroborative and would be evidence at a trial to show that they knew each other. Secondly, the pictures with that child, the allegation is they were taken at a beach. Now we don't know how they were taken. But it's certainly possible that they would be taken in a way focusing on certain parts of the body that would be suggestive that the M.T. was telling the truth about what the defendant did. So that's the photos of the direct victim. Now how about the photos of the other, the swimming pool photos and the baseball photos? Well, the allegation is the defendant is coaching players on a trip to Florida and he's taking a swimming pool video of his players that is sufficiently strange that parents complain. Evidence of a defendant's sexual interest in underage people would be evidence at his trial on sexual molestation. That video very well could have been relevant evidence to prove his sexual interest as well as the baseball photos of his players. Now it will depend on what the evidence actually is when they find it, but that's not what's required to get a search warrant. What's required is to show that this evidence, that is photos exist and that if they show  it, they're not looking for anything relevant. So in that sense, I think the argument that this evidence, that they weren't looking for anything relevant is not correct. The second argument is should they have been looking for it at the parent's house? Well, most readily that is where he was living, but more importantly SJ, his son, says I just helped him move his stuff. I took boxes and bags of belongings to the parent's house. So not only is the defendant there, his stuff was there. And the reply brief to the defendant says, well, maybe he had some of it in storage. Well, maybe he did, but that's not how a search warrant works. There was evidence that he had his belongings at the house. Maybe there were some other belongings somewhere else, but the police don't have to disprove every possible thing to get a search warrant. They had a good faith basis to say his belongings are at that house. In addition, the evidence about the computer is suggestive that the defendant had images at that house that he wanted to hide, that he was taking apart his computer, discarding the tower, keeping the drives. We don't know exactly what was on those drives, but the defendant's behavior is certainly suggestive that he thought that what was on that drive was not good for his case. So there was every reason to believe that the parent's house was the place to look. So the last question, I suppose, is the age of the photographs, the defendant disputes the common sense notion that people keep photographs. Now, this has come up in the case law in the child pornography context, because frequently those are the kind of photographs that are being searched for. And the court has said, I think very logically, that the staleness issues that might come for the kind of evidence that is typically thrown away or sold like drugs doesn't pertain in the same way to child pornography because of their nature, which is pictures that someone is interested in having. But what if the content of the pictures is not itself child pornography or even on the... Exactly. But go ahead. No, you've... Well, if the assertion in the affidavit is that child pornographers keep other kinds of pictures, and I know that from my training, is that a... I think officers can rely on, and I think this is what Judge LaPlante relied on, basic fundamental common sense. Pictures, I'm not talking even about illegal pictures. Just pictures, people keep pictures. People keep pictures of people close to them. I can know in my house, we don't throw away the pictures of our children doing things when they were younger. We don't throw away the pictures of our relatives. Those are not the kinds of things that people discard. MT, the evidence suggests, was someone close to the defendant that he had a close relationship with. It is common sense to think that he would retain those pictures the way that all of us retain pictures, whether electronic or in an album, of people to whom we had a close relationship, whether a legal close relationship or a not legal close relationship. So that common sense, I don't think, can be stripped out of the analysis. In the child pornography cases, I don't think stand for some unique proposition. I think they just sort of reflect that idea. Pictures are important to people. They are not sort of transient property. They are sort of permanent property. And people keep the child pornography pictures because they're important to them in a bad way, but because they're important to them. And so in that limited sense, they're not really different from other kinds of pictures that we keep that are important to us. Can we change the subject slightly? Sure. Yeah. If you could help me refresh my mind on what the record shows on the sexual exploitation counts. What is the nexus to interstate commerce there? Can you tell me what the evidence is? The VHS tape on which the child pornography resided was stipulated to have been an item that traveled in interstate commerce. That applies also to the sexual exploitation counts? Yeah. So the case is the child pornography was made, there's three counts of making child pornography and one count of possession. It's all on one videotape. So on that videotape are the scenes of this child who the defendant knew. He made the child pornography, he put it on the VHS tape, he kept the VHS tape. That VHS tape had traveled in interstate commerce. So we rely on the Berdulias case that said if you put the child pornography on a device, on a storage medium that traveled in interstate commerce, you have met the interstate commerce nexus. Thank you. Okay. So there are no further questions on the suppression issue. If the court has questions on the 414 issue or the sentencing issue, I'd be happy to address them. Since the defendant didn't raise them in her argument, I'd be happy to rest on my brief. Thank you, Judge Turek. I'd just like to go back to the notion of keeping photographs, and I think that has to be put in context. Yes, certainly people keep their family photographs, but that doesn't mean you keep every photograph that you've ever taken. The photographs of the baseball field, for example, were photographs of people he was coaching. He did that for many, many years. There's nothing to suggest that you would keep photographs of people you have been coaching after you're done with that endeavor. And so far as M.T. is concerned, the pictures were taken at sporting events, fishing, other locations as well as at the beach. But again, this was during while he was involved in a relationship with M.T.'s mother. That relationship ended. Perhaps you don't keep photographs of a relationship that has ended. Counsel, I have forgotten, do you concede on the interstate commerce jurisdictional basis that we would have to reconsider Bordoulas in order for you to prevail on that issue? I do. In terms of the computer, the drives that Mr. Jubert kept are drives that don't have anything on them. So to suggest that because he took certain drives and kept them while discarding the drive that might have contained something, again, doesn't support searching the parent's for evidence of these somewhat aged allegations of sexual assault. And if there are no further questions, I will rest on the brief for the other arguments. Thank you.